IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 5:94-cr-2-2 |
| BOBBY LEE INGRAM, | |
| Defendant. | |

**O R D E R**

Defendant Bobby Lee Ingram has filed a Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 300.) The Government has responded in opposition to this Motion. (Doc. 306.) Ingram has replied, (doc. 310), and submitted several supplemental authorities, (docs. 311–313, 315–317.) For the below reasons, the Court **GRANTS** Ingram's Motion, (doc. 300), and reduces his sentence to a term of imprisonment of 327 months.

BACKGROUND

In 1995, a jury found Ingram guilty of one count of conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 846 and 841 (Count One), and five counts of distribution of crack cocaine in violation of 21 U.S.C. § 841 (Counts Six, Eight, Nine, Ten, and Fourteen). (Doc. 92.) The Government filed a notice of enhancement of sentencing because of Ingram's prior convictions pursuant to 21 U.S.C. § 851. Thus, Ingram faced 21 U.S.C. § 841(b)(1)'s enhanced sentencing scheme, which at the time of his conviction and sentencing provided:

- for a crime involving more than 50 grams of crack and when the defendant committed the crime "after two or more prior convictions for a felony drug offense have become final," a mandatory term of life imprisonment, 21 U.S.C. § 841(b)(1)(A) (1994);

- for a crime involving more than 5 grams of crack and when the defendant committed the crime "after a prior conviction for a felony drug offense has become final," a term of 10-years-to-life, 21 U.S.C. § 841(b)(1)(B) (1994); and

- for a crime involving a detectable amount of crack and when the defendant committed the crime "after a prior conviction for a felony drug offense has become final," a term of 0-to-30 years, 21 U.S.C. § 841(b)(1)(C) (1994).

According to the Presentence Investigation Report ("PSR"), Ingram was a mid-level distributor of crack cocaine in a drug organization led by his codefendant, Harry Martin. (Doc. 306-1, ¶ 5.) Martin bought cocaine in Florida and then relied on Ingram and others to distribute the drugs in the Folkston, Georgia, area. (Id. at ¶ 6.) Ingram was addicted to crack cocaine himself and sold the drugs, in part, to support his own addiction. (Id. at ¶¶ 42–43.) The PSR found that Ingram was responsible for over four kilograms of crack. (Id. at ¶ 9.) Based on an offense level of thirty-eight and Ingram's criminal history category of VI, the PSR calculated Ingram's United States Sentencing Guidelines range to be 360-months-to-life. (Id. at ¶ 54.) Yet given the drug quantities and Ingram's prior offenses, the report determined that Ingram's conspiracy conviction in Count One triggered § 841(b)(1)(A)'s mandatory life sentence; that Ingram's distribution conviction in Count Fourteen triggered § 841(b)(1)(B)'s term of 10-years-to-life; and that Ingram's distribution convictions in Counts Six, Eight, Nine, and Ten triggered § 841(b)(1)(C)'s term of 0-to-30 years. (Id. at ¶¶ 51–53.) In other words, given the statutory

provision, the PSR concluded "the guideline range" for Count One "[was] life." (Id. at ¶ 54 (citing U.S.S.G. § 5G1.1(c)(2)).)

The Court sentenced Ingram to life imprisonment on the conspiracy count and 360 months' imprisonment on the remaining counts, to be served concurrently. (Doc. 95.) According to Ingram, the Court expressed displeasure with the mandatory life sentence during the sentencing hearing and lamented that it was "stuck" with that sentence. (Doc. 300-1, pp. 6–7.)

Ingram was thirty-six years old at sentencing and has now served twenty-eight years in prison. His counsel aptly describes his progress during incarceration as follows:

> During this time, he has participated in various programs, including obtaining his GED, completing roughly 60 educational courses (including two drug education courses), and successfully completing [the Bureau of Prisons'] intensive 500-hour residential drug treatment program. See Ex. A, Individualized Needs Plan (Nov. 2023), at 1–2; Ex. B, Individualized Reentry Plan (Feb. 2020), at 5; Ex. C, Certificates of Achievement. Ingram has had no disciplinary infractions in the past five years. See Ex. D, Chronological Disciplinary Record (Oct. 24, 2023). In the nearly 30 years he has spent in prison, Ingram has had only five disciplinary infractions. See id.

(Id. at p. 7.) Ingram has also attached medical records indicating he suffers from Type II diabetes, hypertension, Hepatitis C, and clinical depression. (Doc. 300-17.)

## DISCUSSION

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194–95 (11th Cir. 2010); see also 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except" under limited enumerated reasons.). Upon enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) was amended in order to provide a slim path for a district court to reduce the sentence of a criminal defendant where there are "extraordinary and compelling reasons" to do so. 18 U.S.C. § 3582(c)(1)(A)(i). There are four prerequisites to a court's granting compassionate release under this provision of the First Step Act. First, the defendant must have exhausted his administrative

3

rights with the Bureau of Prisons.  Id. § 3582(c)(1)(A).  Second, the court must find that "extraordinary and compelling reasons warrant" release.  Id. § 3582(c)(1)(A)(i).  Third, the court must consider the factors set forth in 18 U.S.C. § 3553(a), if applicable.  Id. § 3582(c)(1)(A).  Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements.  Id.  "The defendant generally bears the burden of establishing that compassionate release is warranted."  United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *2 (M.D. Fla. May 15, 2020) (citing United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013)).

The Government agrees that Ingram meets the first two of these prerequisites.  Thus, the Court must assess if he has presented valid "extraordinary and compelling reasons" warranting such a reduction and whether he has established that a reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Section 1B1.13 of the Sentencing Guidelines provides the applicable policy statement, explaining that a sentence reduction may be ordered when a court determines, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), that "extraordinary and compelling reasons" exist and the defendant does not present a danger to the safety of any other person or the community.  U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018).  The Commission identifies six categories of "extraordinary and compelling reasons": (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons; and (6) unusually long sentence.  See id. § 1B1.13(b)(1)–(6).  In United States v. Bryant, 996 F.3d 1243, 1252–62 (11th Cir. 2021), the United States Court of Appeals for the Eleventh Circuit held that a district court may not reduce a sentence

under Section 3582(c)(1)(A) unless a reduction would be consistent with Section 1B1.13's definition of extraordinary and compelling reasons.

I.     **Ingram's Unusually Long Sentence Constitutes an Extraordinary and Compelling Reason under a Valid Guidelines Provision.**

Ingram argues that a ground recently added in Section 1B1.13—an unusually long sentence—constitutes an "extraordinary and compelling reason" under the Guidelines and thus supports his motion for sentence reduction  This provision, effective November 1, 2023, states,

> Unusually Long Sentence—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) ("Subsection (b)(6)").  In promulgating the amendment, the Commission specified that Subsection (b)(6) operates alongside subsection (c), which reads:

> Limitation on Changes in Law—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

Ingram meets each prerequisite of this provision.  His life sentence, the longest sentence of imprisonment the Court can impose, is obviously unusually long.  He has served more than ten years of that sentence.  Additionally, the sentence he would receive today would be profoundly less than the sentence imposed.  As Ingram details in his Motion, because of several intervening

5

changes in statutory penalties and case law, he would no longer face a mandatory sentence of life imprisonment and instead would face a sentence of thirty years, at most. (See doc. 300-1, pp. 9–16.)

The Government does not dispute that Ingram meets the requirements of U.S.S.G. § 1B1.13(b)(6). It concedes that Ingram would receive a sentence of 262–327 months' imprisonment if he was sentenced today. (Doc. 306, p. 22.) But the Government contends that the Sentencing Commission exceeded its authority when promulgating Subsection (b)(6). (Id. at pp. 7–20.) As the parties have pointed out, though neither the United States Supreme Court nor the Eleventh Circuit has addressed this question, several other courts have examined it and reached different conclusions. This Court need not add to that robust body of case law except to say that the Court agrees with decisions that have rejected the Government's arguments and found that the subsection is within the authority validly granted to the Sentencing Commission. See, e.g., United States v. Allen, No. 1:09-CR-320-TCB, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024); (see also doc. 317 (Defendant's Notice of Supplemental Authorities listing thirty-five orders, including twenty-three from district courts in the Eleventh Circuit, upholding Subsection (b)(6))). In sum, the Court has fully reviewed the contentions of the parties on this issue and finds Ingram's arguments—particularly those raised in his Reply—availing. (See doc. 306, pp. 4–17).

**II.  Ingram's Other Circumstances, Combined with his Age and Medical Conditions, Constitute Extraordinary and Compelling Reasons.**

Ingram also contends that extraordinary and compelling reasons for his release exist under U.S.S.G. § 1B1.13(b)(5), which applies when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons" identified in the first four paragraphs of the amended Guideline, "are similar in gravity to those described" in those paragraphs. Those four paragraphs refer to a defendant's medical

6

conditions, age, and family circumstances, as well as whether the defendant was a victim of abuse while incarcerated. U.S.S.G. §§ 1B1.13(b)(1)–(4). Additionally, under U.S.S.G. § 1B1.13(d), "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances." Ingram's age and medical conditions (specifically Type II diabetes, hypertension, Hepatitis C, and clinical depression) nearly clear the bar for compassionate release under Subsections (b)(1) and (2). Those circumstances together with his other particularized grave circumstances—including the significant disparity between his sentence and his codefendant's sentence and the difficulties a sentence of life imprisonment would place on an individual with his conditions—create an extraordinary and compelling reason for his release independent of Subsection (b)(6). The Government fails to meaningfully challenge Ingram's evidence and argument on this point. (See doc. 306, pp. 20–21.) Having reviewed the totality of evidence, including Ingram's medical records, the Court is convinced that a sentence of life imprisonment would pose a grave danger to Ingram over and above the purposes of sentencing. Thus, even if the Court were to adopt the Government's standard of risk for this "catchall" subdivision—that being that a defendant must essentially show a risk to life— Ingram has satisfied it.

## CONCLUSION

The Court can only grant compassionate relief "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Under Section 3553(a), federal courts must impose sentences "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a). As the Government concedes, evaluation of these factors weighs heavily in favor of a sentence of 327 months' imprisonment. The nature and circumstances of Ingram's offenses and his criminal history remain a grave concern to the Court. That said, a sentence of 327 months adequately reflects the seriousness of his offense, provides just punishment, and serves the

7

purpose of deterrence. 18 U.S.C. § 3553(a)(2)(A)–(B). Further, while in the custody of the Bureau of Prisons for nearly three decades, Ingram has already obtained "needed educational or vocational training" and "other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Allowing him to be released would also eliminate significant sentencing disparities between Ingram and other defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

In sum, Ingram has presented extraordinary and compelling reasons for his compassionate release validly recognized by the Sentencing Commission, and all the Section 3553(a) factors support his release. Thus, the Court **GRANTS** Ingram's Motion, (doc. 300), and reduces his sentence to a term of 327 months' imprisonment. All other portions of Ingram's sentence remain intact.

**SO ORDERED**, this 7th day of August, 2024.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA